UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10816-RWZ

JOSEPH P. SCHMITT

v.

CARLIN SEWARD, *et al.*

ORDER

July 28, 2010

ZOBEL, D.J.

Plaintiff Joseph Schmitt, a person civilly committed to the Massachusetts Treatment Center ("MTC"), brought this lawsuit against Carlin Seward, another person civilly committed to MTC, for defamation of character and violation of plaintiff's constitutional rights under 42 U.S.C. § 1983.[1]  He also sued several employees of the Department of Corrections ("DOC") whom he later voluntarily dismissed from the action.

Seward did not respond to the complaint and, on plaintiff's motion, the court entered a notice of default.  (Docket # 31.)  Schmitt and Seward thereafter entered into a financial settlement and the complaint was dismissed without prejudice on March 5, 2010.  The settlement did not hold.  On March 10, Schmitt moved for a court order compelling Seward to comply with the settlement terms and, on March 20, a court order that the DOC freeze Seward's prison financial account. Schmitt ultimately filed a "status report" on April 2 which the court treated and allowed as a Rule 60 motion for relief

---

[1] Because Seward is not a state actor, the complaint fails to state a claim and Schmitt cannot recover damages under § 1983.

from the earlier dismissal and a request for a default judgment and assessment of damages.  (Docket # 67.)

Schmitt alleges that Seward falsely accused him of both selling food stolen from the kitchen and making threats of physical violence to compel Seward to sign an affidavit denying the theft allegations.  A DOC investigation resulted in two Observation of Behavior Reports ("OBR"s), one related to the kitchen thefts and the other to the threats.  (Docket # 1 Ex. A (threats), Ex. B (thefts).)  Plaintiff pled guilty to the charges contained in the reports and received identical sanctions which included fifteen days suspension from his kitchen job.  He never served the suspensions because he was, instead, fired.

**I.    Analysis**

The facts in the complaint, which are deemed admitted for the purpose of establishing liability, Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 52 (1st Cir. 2009), establish the four elements of a defamation claim: (1) Seward told prison officials that Schmitt sold him stolen kitchen items and made threats; (2) the statements could damage Schmitt's reputation in his prison community; (3) Seward knew the statements were false; and (4) the statements, because they concern alleged criminal conduct, are actionable without economic loss.  Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003).

Schmitt seeks actual damages for harm to his reputation, emotional distress, and loss of wages from his kitchen job.[2] These cannot be reduced to a sum certain, susceptible to mathematical calculation. Accordingly, the court directed Schmitt to produce a statement with supporting documentation detailing his damages and held a damages assessment hearing by telephone. See KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19-20 (1st Cir. 2003). His evidence must prove the amount of damages to a reasonable certainty. Credit Lyonnais Sec. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see generally Allens Mfg. Co. v. Napco, Inc., 3 F.3d 502, 505 (1st Cir. 1993) (stating general principle that damages must be proven to a reasonable certainty).

A.   **Statements Regarding Theft of Food - Damages**

The record contains little evidence of what, exactly, Seward told prison officials about the food thefts, but it is apparent that he told them that he had purchased stolen kitchen food from Schmitt. It is not clear what portion of Seward's communication was false: Schmitt confessed to Lt. Brouillette, a staff member at MTC, that he had sold food to Seward and was still awaiting full payment (OBR, Docket # 1 Ex. B), he admits in the complaint that he stole food items for his own use (Compl. ¶ 13, Docket # 1), he told the court in the damages hearing that he stole food for his own use, and prison officials

---

[2]Schmitt also requests damages for harm to his institutional record and punitive damages. The harm to his record is more properly characterized as harm to his reputation, as the damage flows from third parties' evaluation of his character after they review the OBR reports. Punitive damages are not available in a defamation action. Ravnikar, 782 N.E.2d at 511 n.4.

discovered stolen kitchen items in his cell (Compl. ¶ 16; OBR, Docket # 1 Ex. B). Given that Schmitt admits to stealing and selling food from the kitchen, he has failed to demonstrate to a reasonable certainty that it was, instead, Seward's allegation of theft and sales that caused the harm to reputation, emotional distress, and loss of his kitchen job.[3]

### B. Statements Regarding Threats - Damages

There is similarly little evidence as to what Seward told prison officials about threats from Schmitt. The OBR accuses Schmitt of making verbal threats to Seward in order to persuade him to write an affidavit exonerating Schmitt of the thefts. Schmitt explained, at the hearing, how this allegation and the resulting OBR could harm his reputation in the eyes of the judge or jury evaluating his status as a Sexually Dangerous Person ("SDP"). While his reputation is already compromised by, at a minimum, his status as an SDP and his admitted kitchen thefts, his reputation before a judge or a jury and in the community generally could be further harmed, albeit to modest extent, by this allegation of physical threats. The court finds that Schmitt suffered $87.00 in damages to his reputation.

Schmitt also explained at the hearing that he suffered emotional distress from the stress of responding to Seward's allegations of threats and the ultimately unfavorable OBR. The court finds Schmitt's statements credible, to a degree, but also

---

[3] The court does not reach this conclusion in reliance on Schmitt's guilty plea to the disciplinary charge. Under Massachusetts law a guilty plea is not conclusive as to the underlying facts in a civil action. Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356, 1363-63 (Mass. 1985). Further, Schmitt states in his complaint that he was innocent of the OBR conduct but pled guilty to get out of the segregation unit.

notes that his distress from the theft allegations was intertwined with the disciplinary proceeding related to his admitted kitchen thefts. The court finds that Schmitt suffered $103.00 in damages from emotional distress attributable to Seward.

Schmitt lost his job in the kitchen after pleading guilty to both sets of OBR offenses. The record is devoid of direct evidence linking his termination with either the OBR for threatening Seward or the OBR for selling food. The official sanction for each OBR included a 15-day suspension from the kitchen job but not termination. The court cannot assume that the OBR for threatening Seward resulted in the termination, particularly when the other OBR, for stealing from the kitchen, is directly related to the kitchen job. Schmitt has not demonstrated to a reasonable certainty that the loss of his kitchen job was the result of Seward's allegation of threats.

## II. Conclusion

Plaintiff is awarded damages against defendant Seward in the total amount of $190.00.

Plaintiff's motion for clarification (Docket # 68) and motion for the court to rule (Docket # 70) are DENIED AS MOOT. Plaintiff's motion to submit an additional statement concerning damages (Docket # 71) is ALLOWED.


    July 28, 2010                                     /s/Rya W. Zobel
        DATE                                            RYA W. ZOBEL
                                                                  UNITED STATES DISTRICT JUDGE